(Reap. Dec. 10539)

SUPERIOR MERCHANDISE COMPANY *v.* UNITED STATES

Entry Nos. 1762; 2720; 779.

(Decided June 13, 1963)

*Stein & Shostak* (*Marjorie M. Shostak* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff* and *Samuel D. Spector*, trial attorneys), for the defendant.

DONLON, Judge: These three appeals to reappraisement, consolidated for purposes of trial, challenge the appraisement of glass bead "necklets" that were imported, in 1954, from Czechoslovakia, through the port of New Orleans.

There is no issue as to the basis of valuation which the appraiser used. That was export value. Plaintiff's statement, filed pursuant to rule 15 in order to define the issues for trial, contends that export value is the correct basis for appraisement. It also appears of record, and without contradiction, that this is merchandise which is not offered for sale for home consumption in Czechoslovakia. So, there is no basis for finding a foreign value.

Controversy here is as to the amount of the export value at the time of the several exportations. The official papers show the respective quantities and dates of exportation of the merchandise as follows:

                264873–A_____ 7,680 dozen_____ July 22, 1954
                264874–A_____ 7,680 dozen_____ September 29, 1954
                264875–A_____ 7,680 dozen_____ July 17, 1954

It is plaintiff's contention that, on the dates of exportation, the price at which such merchandise was freely offered to all purchasers for export from Jablonec nad Nisou, Czechoslovakia, conceded to be the principal market, to the United States, without any price differential for different quantities, was 18¼ cents per dozen necklets, plus packing. The merchandise was appraised at 19½ cents per dozen necklets, plus packing. Controversy is solely as between 18¼ cents and 19½ cents per dozen for the necklets.

These necklets are described as "irregular" merchandise. It appears from the evidence of record that the necklets were made from imperfect, or rejected, glass beads that had been produced, over a period of time, in the course of manufacturing better, or more perfect, beads. Plaintiff, and perhaps others, have a market for such cheap necklets as these, as "give away" or "throw away" items for the annual New Orleans Mardi Gras carnival.

While it might seem that a difference in value of 1¼ cents per dozen necklets, just a shade over 1 mill per necklet, is not a substantial difference, it is a hotly contested difference in this case. The importance of the valuation issue here lies in the fact that, at 19½ cents per dozen necklets, plus packing, the value of the necklets is just over 20 cents

per dozen. On that valuation, the merchandise falls into a different tariff classification, with a considerably higher duty rate than the duty rate of 60 per centum ad valorem claimed on entry, on the basis of a value of less than 20 cents per dozen necklets.

The manufacturer in Czechoslovakia is a firm called Jablonex, located at Jablonec nad Nisou. In a pricelist Jablonex sent to Superior Merchandise Company, 138 Chartres Street, New Orleans, plaintiff herein, under date of April 15, 1954, it was stated that samples of its "throw away necklets" had been sent to Superior. A pricelist was enclosed. This pricelist was for "Throw Away Assortment," exporter's No. 200, and the price quoted was 19½ cents per 1 dozen singles "packing and insurance excluded," based on a minimum quantity of 10,000 dozen.

On May 4, 1954, plaintiff wrote Jablonex in reply, amplifying its cable of the same day, reading "letter and order in mail." This letter reviewed past purchases, explained fully the duty problem, and enclosed an order for 23,040 dozen, or 1,920 gross, to be shipped in 3 lots of 640 gross each. It is significant that, at this stage of the bargaining, plaintiff did not specify a price at which the order was placed.

In stating the duty problem, as bearing on price, plaintiff's letter read as follows:

In checking records you will find that we purchased this type goods on several different occasions, dating all the way back to 1946, and in all instances have paid $2.15 per gross, plus our usual packing charges. Frankly, the reason for this is that the cost is always under 20¢ per dozen, including packing which is added to cost for duty purposes. We must watch this very carefully because the difference in duty between under 20¢ and the 20¢ or over 20¢ per dozen price is almost double. This, of course, would throw our cheap goods out of a selling range and immediately throw it into the same price range as our highest priced goods. You can readily understand, therefore, why we have always paid a limit of $2.15 per gross on this class of merchandise during these few years we have done business in your country.

Further bargaining followed. Jablonex cabled acceptance of the order for 23,040 dozen necklets at 18½ cents "rock bottom," without cash discount, or $4,262.40, plus packing cost of $360.60, a total of $4,623. This works out to a price that is a fraction above 20 cents per dozen. Plaintiff cabled in reply that the price for the necklets (18½ cents) was satisfactory, but that plaintiff must have the usual cash discount, "otherwise cost will be slightly above price limit as per our letter May 4th." In its letter of May 14, 1954, confirming the cable, plaintiff wrote to Jablonex:

Again referring to the cabled offer on which you request 18½¢, we find that we can actually pay this amount as long as the discount of 2% will be deducted by you from that amount so that it will definitely bring the merchandise in at the lower price so that we in turn will be able to sell it in the lower price range.

Jablonex cabled plaintiff on May 15 that "if cost and packing as mentioned and without cash discount cost will be guaranteed under twenty Stop Did our utmost but cannot do more Stop Please cable confirm immediately because started manufacture otherwise will cancel."

On May 16, 1954, plaintiff cabled Jablonex even more fully, explaining what the price offer would do as to duty classification, that is, it "makes total cost fraction over 20," adding "if discount impossible please try 18¼ price Stop This would bring cost fraction under 20 Stop Please go over our figures carefully and think will find us correct."

Jablonex then cabled plaintiff, on May 18, 1954, as follows:

Retel 16/5 Everything okay Stop Entered order as follows

Now 23040 dozen 18¼ makes 4204.80 plus 360.20 packing grand total 4565 gives average 19.81 which we hope okay Stop Please cancel proforma 5614 airmailed 14/5 airexpressing new one Stop Awaiting L/C for first part.

Thus, the price jockeying had proceeded until a bargain for 23,040 dozen necklets, the merchandise of these three consolidated appeals, was concluded at a price of 18¼ cents, plus packing, but without cash discount.

Plaintiff asks the court to find that this is the price of the merchandise "freely offered" to all purchasers, within the purview of the Tariff Act of 1930.

Export value is defined, section 402(d), as follows:

The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

There is no doubt that the value for which plaintiff is claiming is the *price*, at the times of exportation to the United States, which plaintiff agreed to pay *for this merchandise*, as a result of hard bargaining. However, price paid is not necessarily value. *Harry Garbey* v. *United States*, 24 CCPA 48. The question here is, was this the price, within the statutory definition, at which (1) such or similar merchandise was (2) freely offered to all purchasers (3) in the principal market of Czechoslovakia, (4) in the usual wholesale quantities and (5) in the ordinary course of trade, (6) for exportation to the United States.

Plaintiff has adduced proof of a pricelist offering these necklets, on April 15, 1954, at 19½ cents per dozen, plus packing. This is the value at which appraisement was made. Plaintiff has further adduced proof

of extensive negotiation between plaintiff and the exporter in Czechoslovakia to "arrange" a price that would net out as less than 20 cents per dozen for the necklets, not because the necklets did not have that value in the export market, but solely for reasons of tariff classification. Finally, in order to broaden the scope of offerings to include "all purchasers," as the statute requires, plaintiff adduced oral testimony as to a course of negotiation between the exporter and a second New Orleans importer, Jack M. Pulitzer & Bro., the affidavit of a New York importer, William Shaland, and the affidavit of Kvetoslav Bimr, who, in 1961, was sales manager of Jablonex and was employed by Jablonex in some unmentioned capacity in 1954.

The Pulitzer negotiation is generally comparable to plaintiff's bargaining, with one important difference, later discussed. The Shaland affidavit states conclusory facts, not entitled to much weight, and leans on and refers to antecedent correspondence which is not in evidence and, therefore, cannot be weighed. The Bimr affidavit states that no sales of the necklets were made in 1954 for export to the United States, save at 18¼ cents per dozen, plus packing, or 19½ cents per dozen, packed.

The difference, mentioned above, between plaintiff's price for these necklets and that of Pulitzer, is that Pulitzer offered to Jablonex to have total price adjusted between the large order of desired cheap necklets and a small order of higher priced necklets, in order to keep the price of the "throw away" necklets under 20 cents per dozen. The record, in that respect, as to Pulitzer, is fairly clear.

Has plaintiff, by these proofs, met its burden of proof, first, to overcome the presumption that the appraisement value is correct and, second, to prove a claimed value as proper? I am of opinion that plaintiff has not, on the proofs before the court, met this burden.

Plaintiff cites, as authority for the proposition that price supersedes offer, when they are different, the decision of this court in *Dalton-Cooper, Inc.* v. *United States*, 12 Cust. Ct. 456, Reap. Dec. 6007; affirmed, *United States* v. *Dalton-Cooper, Inc.*, 14 Cust. Ct. 299, Reap. Dec. 6087. There are significant differences between the facts here and those in the *Dalton-Cooper* case, as defendant's brief points out.

The trial judge, there, did not consider the higher offers, as plaintiff seems to think; and this was because the higher offers were for future delivery, and the merchandise was not available for immediate delivery. Also, such offers were not made to all purchasers, for six firms in the New York area were excluded, "hence such merchandise was not freely offered 'to all purchasers' at those [higher] prices." *Dalton-Cooper, Inc.* v. *United States, supra*, at page 457.

Moreover, it should be noted that section 402(d), as it was effective in 1954, provides that either "market value" or "price" of merchandise may be the basis of export value, provided price, if it is the basis of

determining value, meets all six of the statutory tests prescribed by Congress in section 402(d).

We may accept certain of those tests as being met. There is no serious issue as to "such or similar" merchandise. There is no serious issue as to the situs of the principal market in Czechoslovakia. It appears to be Jablonec nad Nisou. There is no serious issue as to the fact that such prices, as are respectively contended for by the parties, are prices for export to the United States.

What is in dispute is, first, whether any price lower than $19\frac{1}{2}$ cents per dozen, plus packing, was a price that was freely offered to all purchasers; second, whether plaintiff has shown a usual wholesale quantity other than that evidenced by the Jablonex pricelist; viz, 10,000 dozen; and, third, whether the price for which plaintiff contends was a price "in the ordinary course of trade."

It is in respect of these statutory requirements that I find plaintiff's proofs are insufficient to meet its burden of proof.

Far from showing a "freely offered" price to all purchasers of $18\frac{1}{4}$ cents per dozen, plus packing, plaintiff's proofs, at best, show a sharply bargained price, not "freely offered," and, in one instance, at least, the Pulitzer sale, tied in with a price sharing arrangement as to other and higher priced merchandise, which tie-in was designed, and solely designed, to circumvent an applicable provision of the law. Was Pulitzer a purchaser to whom the necklets were "freely offered" at the price they say they paid *for these necklets?* I think not. Here, at least, was one purchaser to whom, on the facts of record, the price finally bargained was not the uniform price for which plaintiff contends, but a higher price, because a part of the price was absorbed in the price of tied-in merchandise.

If there is a usual wholesale quantity for this merchandise, other than the 10,000 dozen quantity on the basis of which the exporter's pricelist quoted price, such fact has not been adequately shown. The Bimr affidavit says that price did not vary according to quantity. What does that mean? Would price be the same for 1 dozen of the necklets as for 10,000 dozen, or for 23,040 dozen, the amount of plaintiff's purchase at a bargained lower price?

Because of the special terms of the Pulitzer purchase, the record shows a different price, at least to the two purchasers. Therefore, the price which plaintiff claims is not the freely offered price *to all purchasers.*

Moreover, it does not appear in any of plaintiff's proofs that the price plaintiff claims is a *freely offered* price. Certainly, both Pulitzer and plaintiff bargained individually and sharply, and for a reason that was wholly unrelated to the value of the merchandise. How

Shaland bargained, in his correspondence prior to the offer, we do not know; but the proof as to offers to him is not impressive, in any event.

There appears to be no case on all fours as to the issue here of specially bargained prices which are lower than list price offers.

In *Harry Garbey* v. *United States*, 24 CCPA 48, affirming *United States* v. *Harry Garbey*, 68 Treas. Dec. 1211, Reap. Dec. 3640, our appeals court cited with approval the opinion of the appellate division of this court, including the following:

\* \* \* It is true that the shipper and the owner of the stone have both indicated in their affidavits that the invoiced value was the market value, but from such affidavits we are not convinced that such is the freely offered price in the ordinary course of trade. On the other hand, the affidavits lead us to the view that $30,000 was a bargain price for a stone of much greater value, which was accepted in order to get it off their list, rather than a price derived from offers or sales in the ordinary course of trade. It is therefore our opinion that the correctness of the appraiser's finding of value has not been overcome. [P. 51.]

The court held that it does not follow *"as a matter of law*, that the price actually obtained must be taken as the dutiable value in all instances. That assuredly cannot be held to meet the statutory requirements." [Emphasis added.]

What the court is here charged to find is export *value*. Price is one aid in that process. I agree that price need not be taken as dutiable value, as a matter of law, and this is especially so where, as here, there are factors influencing price that are not related to value.

On this record, I find as facts:

1. That the merchandise of these appeals to reappraisement consists of glass bead "necklets," manufactured by Jablonex and sold as its item No. 200, which were exported from Czechoslovakia in July and September 1954.

2. That, at the times of exportation, such or similar merchandise was not freely offered for sale in Czechoslovakia for home consumption.

3. That, at the times of exportation, such or similar merchandise was freely offered for sale in Czechoslovakia for export to the United States.

4. That, at or about the time of exportation, the Jablonex price-list for its "Throw Away Assortment," item No. 200, to Superior Merchandise Company, New Orleans, La. (plaintiff herein), quoted a price of 19½ cents per 1 dozen singles, packing and insurance excluded, based on a minimum quantity of 10,000 dozen.

5. That, at or about the time of exportation, Superior Merchandise Company placed an order for 23,040 dozen of Jablonex item No. 200 necklets at an unstated price and, in an exchange of cables and letters bargaining the price, the bargaining was concluded at a price of 18¼ cents per dozen, plus packing, but without cash dis-

count, in order to avoid the classification and duty consequences of the offered price.

6. That, at or about the times of exportation, Jack M. Pulitzer & Bro., also of New Orleans, La., placed an order with Jablonex for merchandise including necklets, such as or similar to item No. 200 and also some higher priced necklets, and, in an exchange of cables and letters, bargained to have price adjusted between the large order of cheap necklets, such as or similar to item No. 200, and a small order of the higher priced necklets, in order to keep the price of the cheaper necklets under 20 cents per dozen.

7. That the duty rate on necklets, valued at over 20 cents per dozen, is higher than the duty rate on necklets, valued at 20 cents or less per dozen, and that this was the only consideration to either Superior or Pulitzer in their price bargaining over Jablonex item No. 200.

8. That Jablonex item No. 200, in these appeals to reappraisement, was entered at 18¼ cents per dozen, plus packing, and was appraised at export value, 19½ cents per dozen, plus packing.

9. That the record does not establish a value or price at which merchandise, such as or similar to Jablonex item No. 200, was freely offered for sale to all purchasers for export to the United States, in the usual wholesale quantities and in the ordinary course of trade, different from the appraised value.

I conclude as a matter of law:

1. That, at the time of exportation, there was no foreign value for Jablonex item No. 200 necklets, subject of these appeals, as value is defined in section 402(c) of the Tariff Act of 1930, as amended.

2. That plaintiff has failed to overcome the presumptively correct appraised value of Jablonex item No. 200 necklets, subject of these appeals, and that the value thereof is the value returned by the appraiser.

Judgment will be entered accordingly.